# EXHIBIT #1

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act

Statement and other information before completing this form.

| | Charges Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | EEOC | **540-2024-03258** |
| | FEPA | |

| **Arizona Attorney General's Office, Civil Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Salvatore Diganci | (951) 229-0628 | 1982 |

| Street Address |
|---|
| 360 S State Street Apt. #E313 |
| Orem, UT 84058 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| UTAH VALLEY UNIVERSITY | 501+ Employees | |

| Street Address |
|---|
| 800 W UNIVERSITY PKWY |
| OREM, UT 84058 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Disability | 01/02/2023 | 04/17/2024 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about 11/2022 I began working with respondent as Lead Janitor.

On or about 1/9/2023, I had a meeting with management regarding the write up in December. During this meeting I complained that the interpreter was not effective and requested a replacement. Management stated the reason they could not make the change is due to a policy of replacing interpreters.

On or about 1/18/2023, I emailed management to help resolve my issues with interpreters. I received a response from Drew Burke, Curtis Hall and Anthony Garcia who indicated the meeting would not be postponed and they would utilize the interpreter services scheduled or I could bring my own interpreter.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *[signature]* | |
| *Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | **540-2024-03258** |

| **Arizona Attorney General's Office, Civil Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

On or about 3/2023, I applied for Mechanic Tech position and received an interview with the support of  interpretive services. Brett Tech Leader and Corty Tech Leader conducted the interview.  During the interview it was asked whether or not I could hear if the machinery was broken.  I was not selected for the position.

I believe I was discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *Date*                                              *Charging Party Signature* | SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE<br>(*month, day, year*) |

# EXHIBIT #2

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Albuquerque Area Office**
500 Gold Avenue S.W.,Suite 6401, PO Box 128
Albuquerque, NM 87103
(505) 738-6721
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/31/2025

**To:** Salvatore Diganci
360 South State St. Apt #313 USA
OREM, UT 84058

Charge No: 540-2024-03258

EEOC Representative and email:     IVAN SOTO
Investigator
ivan.soto@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 540-2024-03258.

On behalf of the Commission,

April Klug, Area Director
Digitally signed by April Klug, Area Director
Date: 2025.01.31 15:07:27 -07'00'

April Klug
Area Office Director

**Cc:**
Cathy Jordan
Utah Valley University
800 W UNIVERSITY PKWY
Orem, UT 84058

Kara Roth
PO BOX 140856
Salt Lake City, UT 84114

Matthew W Jeppson
PO BOX 140856
Salt Lake City, UT 84114

Jared  Allebest Esq.
Allebest Law Group PLLC
212 E. Crossroads Blvd., #207
Saratoga Springs, UT 84045

Please retain this notice for your records.

# EXHIBIT #3



**Jared Allebest <jared@allebest.com>**

---

## Notice of Claim
1 message

---

**Jared Allebest** <jared@allebest.com>                   Mon, Apr 14, 2025 at 3:03 PM
To: abuchholz@utah.gov
Bcc: Jared Allebest <Jared@allebest.com>

Ashely,

Good afternoon. I hope you had a great weekend.

Attached is a notice of claim for a planned lawsuit against UVU. If you are not the proper and authorized individual to receive the notice of claim, please let me know. A copy of this letter was sent to you by certified first class mail with return receipt requested.

Best,

Jared

**JARED M. ALLEBEST**, JD, Esq.

Allebest Law Group PLLC

Licensed to practice law in California (#325086), Arizona (#034640), and Utah (#13485).

*Mail:* 212 E. Crossroads Blvd. #207 Saratoga Springs, Utah 84045

949/322-3991-cell    801/204-9055-videophone e-mail: jared@allebest.com

     Your referrals are the cornerstone of our business success. They are both welcomed and most sincerely appreciated. We would love your feedback. Please post a Google review to our profile. https://g.page/r/CfiI2Zwyn90mEBM/review

   *We specialize in:*

• **DISABILITY RIGHTS LITIGATION**: Negotiations, Arbitration, Mediation, Litigation, etc. for: disabled individuals who have encountered discrimination or denial of public access in violation of the ADA.

• **DEAF RIGHTS**: Education, Negotiations, Arbitration, Mediation, Litigation, etc.. for: deaf or hard of hearing individuals to ensure reasonable accommodations in employment, medical care, and housing.

• **ESTATE PLANNING**: Living Trusts, Insurance Trusts, Family Partnerships, Residence Trusts, etc. for: Probate Avoidance, Estate Tax Avoidance, and Creating an Orderly Plan Of Distribution.

• **BUSINESS PLANNING**: Partnerships, Corporations, LLCs, Contract Negotiations, Mergers, Acquisitions, Buy-Sell Agreements, etc. for: Entity Creation, Problem Solving, Business Expansion and Continuation.

---

   This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

   IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Allebest Law Group PLLC

 **04102025_SDG_Notice of Claim vF.pdf**
144K

# ALLEBEST LAW GROUP PLLC

212 E. Crossroads Blvd #207 Saratoga Springs, UT 84045 | 949.322.3991 | jared@allebest.com

April 10, 2025

Ashlee Buchholz
Administrative Assistant
350 N. State Street, Suite 230
Salt Lake City, Salt Lake County
Utah 84114

RE: Notice of Claim

Dear Ashlee Buchholz,

Our office represents Salvatore Diganci regarding his employment disability complaint against Utah Valley University (UVU)  in which UVU may have violated Mr. Diganci's civil rights. My client believes that the actions, or omissions, of officers or agents representing the above named agencies and acting under color of law, individually and collectively, represent violations of his civil rights, including real damages. Mr. Diganci believes that his supervisor(s) at  UVU have violated Tile I and Title II of the Americans with Disabilities Act and/or Section 504 of the Rehabilitation Act by failing, refusing, and/or neglecting his request for an ASL interpreter and that the interpreter be someone else other than UVU employee interpreter Katie Palmer for his meeting with Vice President Vice President Peterson to discuss his appeal of his written warning.

Please accept this letter as notice of our intent to file a complaint in United States Federal District Court on Mr. Diganci's behalf. Accordingly, please direct all future communication and correspondence regarding our client to our office.

## STATEMENT OF FACTS

On February 1, 2023, UVU hired Mr. Diganci to work in its Custodial Services. A few months later, On June 1, 2023, UVU promoted CP to Lead Janitor.

On December 20, 2023, CP received a written warning for unprofessional behavior and inappropriate touching. One of the reasons for the written warning is that he was touching coworkers without consent.

In Deaf culture, it is acceptable to touch another person to gain their attention, even if you do not know them well. For example, a Deaf person may tap you on the shoulder to get your attention or they may literally move/shift your body to direct you to see something. Or they may move you aside to show or mimic what they would like you to do. Touching

1

another person is used in Deaf culture to greet, say goodbye, get attention, and express emotion.

Although it is obvious to most people that ASL is a visual language. What is not so obvious is how the visual nature of the language impacts on the rules for communication. In spoken languages there is no requirement for eye contact between the speaker and listener. In fact, hearing individuals spend very little time looking at each other. Hearing people are not used to maintaining eye contact for long periods of time. Also, hearing individuals often allow environmental noises to take their attention, and we divert our eyes. In a signed conversation the "listener" must always look at the "speaker." From the Deaf perspective, broken eye contact or the lack of eye contact shows indifference.

On December 21, 2023, Mr. DiGanci appealed and requested an ASL interpreter. On December 24 and December 27, Mr. Diganci emailed Senior Director of People and Culture Drew Burke stating that he needed an ASL interpreter for his appeal, and that he did not want UVU employee interpreter Katie Palmer. On January 2, Mr. Diganci also requested a transcriber.

On January 3, UVU Assistant Director Cameron Evans said that he would assist in arranging an interpreter and a transcriber for a meeting with Mr. Diganci and his vice president, Val Peterson. Mr. Evans said that once he had the meeting date and time, that he would submit the request to UVU's outside vendor.

There are at least seven known ASL interpreting agencies and there are approximately 780 interpreters in the state of Utah according to the Utah Interpreter Program's website.[1] The Utah Interpreter Program (UIP) "is responsible for certifying and regulating all American Sign Language (ASL) interpreters providing services in the state of Utah. Utah Code 35A-13 Part 6 requires interpreters be certified to work in the state. To that end, UIP offers interpreter certification examinations for both Deaf and hearing interpreters and recognizes certifications issued by The Registry of Interpreters for the Deaf (RID) and scores above 3.5 from the Educational Interpreter Proficiency Assessment (EIPA)."[2]

On January 9, Mr. Evans emailed Mr. Diganci saying that he had contacted both of UVU's outside vendors, and that neither of them had anyone available at the time of the meeting. He stated "[b]ecause they do not have anyone available, I needed to reach out to our internal team so that we can make sure you have an interpreter. Due to the first week of the semester, the only interpreter available at the time of the meeting is Katie Palmer. Katie will be there to provide ASL interpretation for you. I have also scheduled a transcriber to be available for this meeting. This transcriber will type the conversation and you will be able to see it in real-time as well as provide a written copy to you at the conclusion of the meeting."

---

[1] "Utah Interpreter Directory". Utah Department of Workforce Services. https://jobs.utah.gov/usor/uip/directory.html. Accessed on April 8, 2025
[2] Utah Interpreter Program. Utah Department of Workforce Services. https://jobs.utah.gov/usor/uip/index.html Accessed on April 8, 2025

Mr. Evans said that "[w]e did try to accommodate your preferences, but due to a lack of availability, we had to go forward with the resources we have available. Hopefully, having the transcriber provide real-time captioning will help you confirm that nothing is being lost in translation." Mr. Diganci responded to Mr. Evans's email by simply stating, "No Katie palmer" [sic].

At some point, Anthony Garcia replaced Cameron Evans. Mr. Garcia told Mr. Diganci to bring his own ASL interpreter. Mr. Diganci is not responsible to provide his own ASL interpreter as an employee of UVU. Furthermore, Catherine Jordan told Mr. Diganci that UVU is not required to provide an alternative ASL interpreter when the employee has concerns about the quality and effectiveness of an ASL interpreter.

Vice President Peterson was unable to meet with Mr. Diganci on any other day than January 9 at 1pm. Mr. Diganci said that he was unable to meet at 1pm. He requested to meet on January 11 or 12, but Vice President Peterson was unavailable those days. Vice President Peterson then made himself available to meet with Mr. Diganci on January 9 at 3pm but the transcriber would not be available then. Mr. Diganci responded "[m]y plan is at 3p.m. with different asl Interpreter and transcriber but It doesn't match my plan. No. It hurt me" [sic]. Id. Mr. Diganci did not show up to the meeting with Vice President Peterson.

. On January 12, Vice President Peterson affirmed the disciplinary action for the written warning. The written warning resulted in Mr. Diganci being ineligible for merit pay for the year, but otherwise did not alter Mr. Diganci's position, rate of pay, or other terms of his employment.

On February 13, 2024, Mr. Diganci applied for the position of Technician – Facilities Services. UVU employees Cody Day, Brett Anderson, Dana Torp, and Thamas Harding reviewed the job applications, including Mr. Diganci. The job interviewers interviewed all applicants who received a score of 3 or higher. Mr. Diganci received a total score of 3.625 and thus was given an interview. Mr. Diganci was provided with an interpreter for the interview, and unlawful interview questions may have been asked at that job interview.

Mr. Diganci timely filed his Charge of Discrimination on April 22, 2024. The EEOC issued its Right to Sue Letter on January 31st, 2025.

## AMERICANS WITH DISABILITIES ACT

Under the Title I of the Americans with Disabilities Act (ADA), a covered entity is defined to mean an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111 (2). An employer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who

has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person." 42 U.S.C. § 12111 (5)(A). The ADA clearly applies to UVU because it is a covered entity that has more than fifteen employees who are employed at Utah Valley University.

Under Title II of the ADA, which applies to state and local government agencies, shall not exclude a qualified individual with a disability "from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130 (a). Neither can a public entity deny "a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service" or "afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 28 C.F.R. § 35.130 (b)(i-ii).

## SECTION 504 OF THE REHABILITATION ACT

Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), states that "no otherwise qualified individual with a disability in the United States" shall "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a)

Within the context of educational institutions, "no qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance. 34 C.F.R. Part 104.4(a)

## PRESERVATION OF EVIDENCE

This letter is notice of an impending action. Please take all necessary measures to preserve any and all evidence regarding the above-referenced claims.

Please be advised that Mr. Diganci believes electronically stored information to be an important and irreplaceable source of discovery and/or evidence in what transpired while employed at UVU. The lawsuit requires preservation of all information from the Defendant's (which includes the State of Utah and/or Utah Valley University) and/or third party's computer systems, removable electronic media, and other locations. This includes, but is not limited to, email and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, Internet usage files, police reports, employee file, and network access information.

The Defendant should also preserve the following platforms in the possession of the Defendants or a third party under the control of the Defendants (such as an employee or

4

outside vendor under contract): databases, networks, computer systems, including legacy systems (hardware and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges and other storage media, laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voicemail).

## DAMAGES

The acts or omissions of the agents and agencies listed caused Mr. Diganci to suffer financial loss and spending personal funds to travel to meet with his attorney which he would not have otherwise had to spend had UVU not violated his civil rights and internal UVU policy.

Mr. Diganci has been forced to engage the services of an attorney. Therefore, he is entitled to an award for attorneys' fees and costs.

Furthermore, he has suffered irreparable harm in the nature of psychological injury, humiliation, limitation of freedom, and other forms of intangible injuries to his dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of his Constitutional rights. He also suffered from severe emotional distress (much more than a typical person could be expected to endure) as a direct result of the acts or omissions of UVU (or their respective agents or employees).

Mr. Cooperstein is demanding changes in the policies and practices of the agencies involved and believes that he is entitled to compensation for actual losses. Furthermore, if he does prevail at trial he may be entitled to legal fees as a matter of law.

## CONCLUSION

This matter could have been avoided if UVU honored his request for an ASL interpreter by having someone else other than Katie Palmer be the interpreter for a meeting with Vice President, Val Peterson, to discuss his appeal of a written warning that he had received as an employee of UVU. Mr. Diganci indicated that he did not want UVU employee interpreter Katie Palmer as the ASL interpreter for his meeting with Val Peterson because he believes she is not ethical as an ASL interpreter and because she lacks the skills to be a good interpreter. This request for another ASL interpreter was a reasonable accommodation request as a modification to UVU's polices, practices, and/or procedures. By failing to provide the Plaintiff with an alternative ASL interpreter, UVU violated the American with Disabilities Act's (ADA) and requirements to provide equal opportunity to individuals with disabilities in the workplace.

The refusal to provide him with an alternative ASL interpreter may be deemed as a disability discrimination. Utah does not suffer from a lack of certified and qualified ASL interpreters for government agencies and private business to provide to individuals who are

deaf or hard of hearing. As explained above, there are at least seven known ASL interpreting agencies and there are approximately 780 interpreters in the state of Utah according to the Utah Interpreter Program's website. UVU could have easily found an alternative ASL interpreter for Mr. Diganci.

Furthermore, this matter could have also been avoided if unlawful interview questions were not asked at the job interview for the position of Technician – Facilities Services.

Sincerely,

*Jared Allebest*

Jared Allebest, #325086 (CA), #034640 (AZ), #13485 (UT)

CC: Salvatore DiGanci.

EXHIBIT #4

# STATE OF UTAH
### OFFICE OF THE ATTORNEY GENERAL



# DEREK E. BROWN
## ATTORNEY GENERAL

| Mark E. Burns | Daniel Burton | Douglas Crapo | Stanford E. Purser | Stewart M. Young |
|---|---|---|---|---|
| Civil Deputy Attorney General | Chief Deputy Attorney General & General Counsel | Consumer Protection Deputy Attorney General | Solicitor General | Criminal Deputy Attorney General |

April 22, 2025

*Via Electronic Mail*

Jared M. Allebest
Allebest Law Group
212 E. Crossroads Blvd., #207
Saratoga Springs, UT 84045
jared@allebest.com

     Re:  Notice of Claim

Dear Mr. Allebest:

     We have received your notice of claim submitted on behalf of Salvatore Diganci. Please be advised that this letter does not constitute a waiver of any of the provisions or requirements of the Governmental Immunity Act of Utah, Utah Code § 63G-7-101 to -904, nor does it confirm or verify the sufficiency of the notice of claim as required by the Act.

     Sincerely,

STEVEN A. COMBE
Assistant Utah Attorney General
Deputy Director, Litigation Division

# EXHIBIT #5



**UTAH VALLEY UNIVERSITY**
Policies and Procedures

| **POLICY TITLE** | Staff Grievance | **Policy Number** | 335 |
|---|---|---|---|
| **Section** | People and Culture | **Approval Date** | June 21, 2024 |
| **Subsection** | Conditions of Employment | **Effective Date** | June 21, 2024 |
| **Responsible Office** | Office of the Vice President of People and Culture | | |

## 1.0 PURPOSE

**1.1** The purpose of this policy is to provide a fair and equitable process for eligible full-time staff employees to grieve formal performance measures, including written warnings, final written warnings, probation, reduction in pay, suspension, demotion, and termination.

## 2.0 REFERENCES

**2.1** *Government Records Access and Management Act (GRAMA)*, Utah Code Ann. § 63G-2-101 (2008)

**2.2** *Utah Protection of Public Employees Act*, Utah Code Ann. § 67-21-3.7 (1985)

**2.3** Utah Board of Higher Education Policy R831 *Minimum Requirements for Non-Faculty Staff Employee Grievance Policy*

**2.4** UVU Policy 162 *Title IX Sexual Harassment*

**2.5** UVU Policy 165 *Discrimination, Harassment, and Affirmative Action*

**2.6** UVU Policy 331 *Performance Evaluation for Staff Employees*

**2.7** UVU Policy 371 *Performance Management and Development for Full-Time Staff Employees*

## 3.0 DEFINITIONS

**3.1 Clear and convincing evidence**: Clear and convincing evidence is an intermediate standard that requires more than a preponderance of evidence but does not require proof beyond a reasonable doubt. It requires the existence of facts that make a conclusion very highly probable.



# UTAH VALLEY UNIVERSITY
Policies and Procedures

**3.2 Confirmation of termination**: Document that confirms a staff employee's employment with the University is or will be terminated. The supervisor provides this document to the staff employee after the staff employee has responded in a timely manner to a notice of intent to terminate document or the time period for response in a notice of intent to terminate has lapsed.

**3.3 Formal performance measure**: An action imposed on a staff employee pursuant to UVU Policy 371 *Performance Management and Development for Full-Time Staff Employees*. Formal performance measures include written warning, final written warning, probation, reduction in pay, suspension, demotion, and termination.

**3.4 Full-time employee:** An employee hired into a position where the University reasonably believes that they will work at least 130 hours per month (30 hours per week) in 12 months.

**3.5 Grievance**: The act of appealing a formal performance measure.

**3.6 Informal performance measure**: A supervisor may provide or give a performance measure that may include positive reinforcement, verbal coaching, training, performance reminders, or performance improvement plans (PIPs).

**3.7 Performance measure**: Specific management activities and actions intended to develop, promote, recognize, or reinforce desired behaviors and performance. These activities also include sanctions up to and including dismissal from employment or other remedies used to deter unacceptable performance.

**3.8 Probationary period**: The period of initial employment that provides the employee and the University the opportunity to assess the employee's ability to perform the required duties and fulfill the position's responsibilities.

**3.9 Substantial evidence**: Relevant evidence that a reasonable person might accept as adequate to support a conclusion. Substantial evidence is less than preponderance of evidence (i.e., not necessarily "more likely than not").

## 4.0 POLICY

### 4.1 Scope of Policy

**4.1.1** This policy applies only to full-time staff employees who have completed their probationary periods. This policy does not apply to any part-time employee or to part-time or full-time faculty (tenured, tenure-track, not on tenure track, adjunct) or executives.

**4.1.2** This policy applies to grievances of formal performance measures under UVU Policy 371 *Performance Management and Development for Full-Time Staff Employees*.



**UTAH VALLEY UNIVERSITY**
Policies and Procedures

**4.1.3** This policy does not apply if any other policy applying to staff contains its own grievance or appeal procedures. In those cases, the other policy's grievance or appeal procedures apply. For example, this policy does not apply to any complaints, grievances, or appeals alleging or related to protected class discrimination, sexual misconduct, equal opportunity, or any other issues addressed by UVU Policy 162 *Title IX Sexual Harassment* or UVU Policy 165 *Discrimination, Harassment, and Affirmative Action*. Staff may grieve or appeal these claims only under UVU Policy 162 or UVU Policy 165. Moreover, this policy does not apply to appeals of performance evaluations addressed by UVU Policy 331 *Performance Evaluation for Staff Employees*.

**4.1.4** Staff may not grieve some workplace issues under this policy. These issues include but are not limited to informal performance measures, termination during the probationary period, wages and salaries, classification actions, reassignment of job duties and responsibilities, verbal warnings, and day-to-day directives and assignments to staff. Staff may not grieve a reduction in force or reorganization unless they allege that appropriate UVU procedures have been violated.

## 4.2 Policy Statement

**4.2.1** The University is committed to fair and equitable treatment of eligible employees who wish to grieve formal performance measures. Full-time staff employees who have completed their probationary periods may grieve the following issues: (1) whether the events supporting the formal performance measure actually happened; (2) whether the determination of a policy violation is correct; or (3) whether the formal performance measure is appropriate and proportional.

**4.2.2** The staff employee grieving the formal performance measure bears the burden of proof by clear and convincing evidence. Clear and convincing evidence is an intermediate standard that requires more than a preponderance of evidence but does not require proof beyond a reasonable doubt. It requires the existence of facts that make a conclusion highly probable.

**4.2.3** At any stage of the grievance process, either party may request an informal mediation to resolve a formal performance measure. Mediation will only occur if both parties willingly agree to participate. Mediation is a free service offered to all staff employees. If resolution is not reached through mediation, the grievant may withdraw the grievance or engage in the grievance process as outlined in this policy.

**4.2.4** UVU's Vice President of People and Culture or designee is responsible for coordinating staff grievances in accordance with this policy.

**4.2.5** If a staff employee receives a decision at any step of the grievance process and does not ask for further review of the grievance within the specified time limit, the staff employee's grievance will be closed and deemed waived with no option to appeal.

**4.2.6** A proposed resolution of a grievance that involves an exception to a university policy requires review by the Office of General Counsel and approval of the Vice President of People



**UTAH VALLEY UNIVERSITY**
Policies and Procedures

and Culture and the supervising vice president (or the President if the grievance is based on an action by a vice president).

**4.2.7** Reasonable time off with pay during scheduled working hours shall be provided to the staff employee who has a right to the staff employee grievance procedures, the staff employee's representative, or any witnesses called to testify, for time spent participating in proceedings leading to resolution of the complaint.

**4.2.8** Time spent by the said staff employee or representative in such activities outside scheduled working hours is non-compensable. Neither time off with pay nor compensation is provided for time or money spent in preparation for such proceedings. The grievance panel may use resources available to obtain the appearance of necessary witnesses.

**4.2.9** All testimony given at a grievance hearing before a panel for grievances of demotion or termination must be given under oath.

**4.2.8** No member of the university community may retaliate against any staff employee for initiating the grievance process in good faith or for honestly participating in the grievance process as a witness, grievance panel member, or otherwise.

## 5.0 PROCEDURES

### 5.1 Grievances Other Than Termination

**5.1.1** Grievances of formal performance measures other than termination proceed according to the following process.

### 5.1.2 Informal Resolution—Discussion between Staff Employee and Supervisor

**5.1.2.1** Staff employees who wish to pursue a grievance shall initially attempt to informally resolve the grievance with their immediate supervisor or decision maker. People and Culture will assist both parties in the informal resolution.

**5.1.2.2** To initiate the informal resolution process, the grievant must send a written grievance explaining their concerns to their immediate supervisor and the Vice President of People and Culture or designee within five working days of the notification of the formal performance measure.

**5.1.2.3** The supervisor shall respond to the grievant and the Vice President of People and Culture or designee in writing within five working days of receiving the written grievance.

**5.1.2.4** If the grievant believes the matter cannot be prudently discussed or resolved with the immediate supervisor through an informal resolution, the grievant may appeal the formal performance measure under 5.1.3 within five working days of formal performance measure.



**UTAH VALLEY UNIVERSITY**
Policies and Procedures

**5.1.3 Formal Resolution—Review by Appropriate Vice President**

**5.1.3.1** *Informal Resolution Appeal:* A grievant may appeal the informal resolution by submitting the written appeal to the Vice President who oversees the grievant and the Vice President of People and Culture or their designee within five (5) working days of receiving the informal resolution decision.

**5.1.3.2** *No Supervisor Response to Informal Resolution Notice:* If the supervisor did not respond to the grievant in the Informal Resolution, the grievant may appeal to Formal Resolution by submitting an appeal to the Vice President who oversees the grievant and the Vice President of People and Culture or their designee within five (5) working days after the supervisor's response deadline expired.

**5.1.3.3** *No Informal Resolution Process*: If the grievant skipped Informal Resolution, they may appeal the formal performance measure by submitting a written appeal to the Vice President who oversees the grievant and the Vice President of People and Culture or their designee within five (5) working days of receiving the formal performance measure.

**5.1.3.4** The vice president or designee who oversees the grievant must meet with the grievant as part of the vice president's review of the appeal. The vice president will reach a decision on the appeal in accordance with the standards in sections 4.2.1 and 4.2.2 and issue a written decision to the grievant within 10 working days of receiving the appeal. If the grievant reports directly to the vice president, or if the vice president has a conflict of interest as determined by the Vice President of People and Culture or designee in consultation with the Office of General Counsel, the President will decide the appeal.

**5.1.3.5** The grievant has the right to be accompanied by a person of their choice during the appeal.

**5.1.3.6** The grievant may waive the option to meet with the vice president or designee in writing.

**5.1.3.7** The decision of the vice president (or, as outlined in 5.1.3.2, the President) shall be final and binding and is not appealable.

**5.2 Grievance of Termination**

**5.2.1** Within five (5) working days after the grievant's supervisor sends or provides a *Confirmation of Termination* document to the grievant, the grievant may request a termination grievance hearing before a grievance panel in writing to the Vice President of People and Culture or designee. The written request for a grievance hearing must state the ground(s) for the request (based on one or more of the scopes of grievance set forth in section 4.2.1) and provide the reasons supporting the ground(s).



# UTAH VALLEY UNIVERSITY
## Policies and Procedures

### 5.2.2 Selection and Training of Grievance Panel

**5.2.2.1** If a staff employee requests a termination grievance hearing, the Vice President of People and Culture or designee shall promptly convene a three-member grievance panel.

**5.2.2.2** Each panel member must be in good standing with the University, must not be employed in the same vice president's reporting structure as the grievant, must not be a supervisor of the grievant, and must not have any conflicts of interest relating to the grievant or any allegation in the grievance.

**5.2.2.3** The Vice President of People and Culture or designee will inform the parties (the grievant and the responding supervisor/decision maker) of the chosen panel members and give each party the option to provide any objections to the panel members based on bias or conflict of interest within five (5) working days. In consultation with the Office of General Counsel, the Vice President of People and Culture or designee will review and decide on any conflict of interest or bias objections raised by the parties.

**5.2.2.4** The Vice President of People and Culture or designee shall arrange for the selected panel members to attend a training on these procedures provided by the Office of General Counsel.

**5.2.2.5** The panel shall choose a panel chair, considering availability and panel experience. The name of the selected grievance panel chair shall be communicated by the panel members to the Vice President of People and Culture or designee, and the parties. The panel shall consult with an attorney assigned by the Office of General Counsel to advise the review panel regarding legal, procedural, policy, and other questions as needed during the review process. Parties may request remote video conferencing so they do not have to be present in the same room at the same time during the hearing. Such requests must be made in writing to the Vice President of People and Culture or designee at least ten (10) working days before the hearing, and the Vice President of People and Culture or designee shall make the appropriate arrangements. The Vice President of People and Culture or designee may conduct a pre-hearing conference to formulate or simplify the issues, obtain admissions of fact and documents that will avoid unnecessary proof, arrange for the exchange of proposed exhibits, outline expectations for the hearing, or agree to other matters that may expedite the orderly conduct of the hearing.

### 5.2.3 Preparing for Hearing

**5.2.3.1** The Vice President of People and Culture or designee will conduct a hearing within twenty (20) working days of confirming the panel and panel chair, unless the schedules of the parties or panel members require that the hearing be scheduled on a later date.

**5.2.3.2** The Vice President of People and Culture or designee will provide to the parties and panel (1) the written request for hearing by the grievant; (2) the supervisor or decision maker(s)' written responses (if any); and (3) material documents related to the decision(s) being grieved.



# UTAH VALLEY UNIVERSITY
## Policies and Procedures

**5.2.3.3** The hearing is an opportunity for the parties to address the grievance panel about the issues being grieved. Each party will have the opportunity to be heard and to respond to any questions from the panel as the panel applies sections 4.2.1 and 4.2.2 to the grievance.

**5.2.3.4** At least ten (10) working days before the hearing date, the grievant and the supervisor/decision maker shall provide the Vice President of People and Culture or designee the following materials:

1) A *Statement Document* of no more than five pages that addresses the grievant's issues, concerns, and proposed solutions framed in terms of the scope of the grievance in section 4.2.1 and the standard of proof in section 4.2.2. The *Statement Document(s)* shall be provided in electronic format.

2) A complete list of all proposed witnesses that each party will call to testify (in person or via video communication) at the hearing and a brief description of the testimony and/or information such witnesses may provide. The witness list shall be provided in an electronic format.

3) Copies of all documents, exhibits, reports, and any other information (collectively referred to hereinafter as "exhibits") in support of the parties' respective positions on the issues and proposed solution. All exhibits shall be provided in an electronic format to the extent possible.

4) Notice of whether the party will bring a support person to the hearing, the email address and phone number of the support person, and whether the support person is an attorney. UVU employees that have a conflict of interest may not serve as support persons.

**5.2.3.5** The Vice President of People and Culture or designee will provide the information listed in 5.2.3.4 to the parties and the panel.

### 5.2.4 Conducting the Hearing

**5.2.4.1** If the grievant fails to appear at the hearing at the specified time and place without good cause, the grievance will be deemed abandoned and therefore closed. In the event the supervisor or decision maker fails to appear at the hearing at the specified time and place without good cause, the panel will still hear the grievance.

**5.2.4.2** The Vice President of People and Culture or designee shall record the hearing, except for deliberations. The Vice President of People and Culture or designee shall provide a copy of the recording to either party upon request at the requesting party's expense.

**5.2.4.3** The panel chair will conduct the hearing and regulate the introduction of evidence for the panel's consideration in accordance with section 5.2.3.1.

**5.2.4.4** The review panel shall not be bound by strict rules of legal evidence or procedure and may consider any evidence it deems relevant to its determination. The review panel chair shall



# UTAH VALLEY UNIVERSITY
## Policies and Procedures

determine the appropriateness and relevancy of any information and questions submitted and may exclude evidence deemed to be outside the scope of review, irrelevant, or duplicative. The panel may exclude evidence that was available to a party but not provided during the investigation.

**5.2.4.5** The panel chair will open the hearing by naming the parties and shall state, in a neutral manner, the nature of the actions taken thus far in the grievance process. The panel chair may also remind the panel and parties of this policy and procedures. All participants at the hearing should be identified at the beginning of the hearing.

**5.2.4.6** Each party has up to 120 minutes to present their portion of the case (testimony of the party and that party's witnesses and questioning of the other party's witnesses). Questioning by the panel is not included in this 120-minute time limit. The panel chair or designee will keep track of the amount of time each party takes to present their portion of the case.

**5.2.4.7** If a party has brought a support person, either the party or the support person should present the opening statement, testimony, and closing statement. For example, the party could present the opening statement while the support person questions the witnesses and presents the closing statement, but the witnesses may not be questioned by both the party and that party's support person. After issuing a warning, the panel chair has authority to exclude from the hearing any party, support person, or other participant whose behavior the panel finds unduly disruptive.

**5.2.4.8** The order of the hearing shall be as follows:

1) Opening statement by grievant

2) Opening statement by responding supervisor/decision maker

3) Testimony of the grievant, including presentation of exhibits

4) Testimony of grievant's witnesses, including any exhibits

5) Testimony of the supervisor/decision maker, including presentation of exhibits

6) Testimony of the supervisor/decision maker's witnesses, including any exhibits

7) Closing statement by grievant

8) Closing statement by supervisor/decision maker

**5.2.4.9** The grievant's opening statement should briefly summarize the nature of the grievance and requested remedy. The supervisor/decision maker's opening statement should briefly summarize their response to the grievant's concerns and requested remedy. There should be no



# UTAH VALLEY UNIVERSITY
Policies and Procedures

cross examination during the opening statements. In most cases, a five-minute opening statement will suffice, though the panel chair may adjust as appropriate.

**5.2.4.10** Each party may testify and offer relevant evidence (i.e., exhibits) to all parties and panel members in support of their positions. At any time, the grievance panel members may ask questions of either party. At the end of a party's testimony, the other party shall have the opportunity to ask any questions regarding the testimony and exhibits, limited to the scope of testimony provided by the party.

**5.2.4.11** In addition to their own testimony and submission of exhibits, each party may call witnesses, who shall not be allowed in the hearing room until called to testify. Each witness shall provide their own information and testimony to the panel and may be questioned and cross-examined by the panel at any time. At the end of each witness's testimony, the other party and panel members shall have the opportunity to ask any questions of the witness regarding the witness's testimony, limited to the scope of testimony provided by the witness.

**5.2.4.12** At the conclusion of a party's presentation, the panel chair will call for any final questions from the other party or panel member regarding the presentation.

**5.2.4.13** The closing statements of both parties should summarize their positions and set forth proposed remedies. In most cases, a 15-minute closing statement will suffice, though the panel chair may adjust as appropriate.

## 5.2.5 Panel Deliberations and Decision

**5.2.5.1** The grievance panel members are prohibited from discussing any matter related to the hearing with the parties, witnesses, and/or others before or after the hearing. Violation of this prohibition by panel members may result in dismissal from the panel and/or other performance measures.

**5.2.5.2** Panel deliberations and voting shall occur in closed sessions from which all other persons (except for legal counsel from the Office of General Counsel) are excluded. A majority vote by the members of the grievance panel who attended the hearing shall be required for recommendations. The Vice President of People and Culture or designee shall not participate in the panel's deliberations.

**5.2.6** The grievance panel shall determine whether the grievant has shown by clear and convincing evidence the basis for the grievance stated in section 4.2.1. The panel will make findings and recommendation(s) regarding whether and how to uphold or modify the termination decision and regarding any other relevant issues to remedy a substantiated grievance.

**5.2.7** The panel chair will report the panel's findings and recommendation(s) in writing to the Vice President of People and Culture or designee and appropriate vice president (or, if the supervisor/decision maker is a vice president, to the President), with copies also emailed to the



**UTAH VALLEY UNIVERSITY**
Policies and Procedures

grievant and the supervisor/decision maker, within five (5) working days after conclusion of the hearing.

**5.2.8** Within five working days of the panel chair emailing the recommendation letter, the grievant and the supervisor/decision maker may each email a letter no more than five pages to the appropriate vice president (or the President) (with copies to the Vice President of People and Culture or designee and the other party) responding to the panel recommendations addressing any of the following:

1) The standards in Sections 4.2.1 and 4.2.2 of this policy as applied to the present grievance and the remedy that the party is requesting

2) Alleged procedural errors during the grievance process that substantially altered the panel's recommendation, and the remedy that the party is requesting (such as a new grievance hearing); deviation from the timelines in this policy or other arguments of delay in the process do not meet this standard

3) New relevant evidence that did not become available until after the grievance hearing that would have substantially altered the panel's recommendation, and the remedy that the party is requesting (such as a new grievance hearing)

**5.2.9** Within 15 working days of receiving the panel's written report, the appropriate vice president (or the President) will review the documents that were submitted to the panel, the panel's recommendation letter, and the written submissions under section 5.2.9 of this policy.

**5.2.10** The vice president (or the President) will issue a written decision to the grievant, supervisor/decision maker, the grievant's and supervisor/decision maker's respective counsel, and the Vice President of People and Culture or designee.

**5.2.10.1** The vice president's (or the President's) written decision will affirm, reverse, or modify the termination being grieved.

**5.2.10.2** If a vice president is the grievant or has a conflict of interest, the President will receive the panel's written report and render the written decision.

**5.2.10.3** In cases where both the vice president and the President have a conflict of interest, the written decision will be made by an appropriate person designated by the Vice President of People and Culture or designee in consultation with the Office of General Counsel.

**5.2.10.4** The Office of General Counsel shall assign an attorney who did not serve as counsel to the panel or previously advise the supervisor/decision maker on the grievance to provide legal counsel to the vice president (or the President).



**UTAH VALLEY UNIVERSITY**
Policies and Procedures

**5.2.11** The final decision of the vice president, President, or other designated person (as outlined in 5.2.10) is final and binding; the grievance is considered closed with no additional internal appeals available to the grievant.

| POLICY HISTORY | | |
|---|---|---|
| Date of Last Action | Action Taken | Authorizing Entity |
| October 25, 2018 | Temporary Emergency policy approved. | UVU Board of Trustees |
| June 18, 2019 | Regular policy approved. | UVU Board of Trustees |
| August 14, 2020 | Nonsubstantive change to sections 2.3 and 4.1.3: Title of Policy 162 updated from *Sexual Misconduct* to *Title IX Sexual Harassment.* | UVU Policy Office |
| January 4, 2024 | Non-substantive changes to remove "Human Resources" and replace with "People and Culture" or "Vice President of People and Culture" when appropriate | UVU Policy Office |
| June 21, 2024 | Revision approved through regular policy process. | UVU Board of Trustees |

# EXHIBIT #6

| | |
|---|---|
| **From:** | Marilyn Meyer |
| **To:** | Drew Burke; Cathy Jordan |
| **Subject:** | FW: Make a appeal |
| **Date:** | Tuesday, January 2, 2024 11:49:37 AM |

---

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Thursday, December 21, 2023 3:41 PM
**To:** Marilyn Meyer <Marilyn.Meyer@uvu.edu>
**Subject:** Re: Make a appeal

Marilyn,


I forwarded email you from val peterson from written an appeal for disagreement.  let me know. I need asl interpreter in person. Thank you. my English is limited.


11006124
Salvo Di Ganci

---

**From:** Marilyn Meyer <Marilyn.Meyer@uvu.edu>
**Sent:** Thursday, December 21, 2023 1:46 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Subject:** RE: Make a appeal

Salvo,

I acknowledge receipt of your email and will notify VP Val Peterson of your desire to appeal.  Should you need assistance with understanding the process, please reach out to our Senior Director of Employee Relations, Drew Burke.

Kind regards,
Marilyn

---

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Thursday, December 21, 2023 1:28 PM
**To:** Marilyn Meyer <Marilyn.Meyer@uvu.edu>
**Subject:** Make a appeal

Marilyn,

I'm willing to make an appeal from my complaint.

| | |
|---|---|
| **From:** | Marilyn Meyer |
| **To:** | Cathy Jordan; Drew Burke |
| **Subject:** | FW: Written an Appeal |
| **Date:** | Tuesday, January 2, 2024 11:49:12 AM |

FYI

---

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Thursday, December 21, 2023 3:37 PM
**To:** Val Peterson <PETERSVA@uvu.edu>
**Cc:** Marilyn Meyer <Marilyn.Meyer@uvu.edu>
**Subject:** Written an Appeal

Val,


I'm here to written an appeal with disagreement from lists


-  About taking employee's phone away, I was following by supervisor's conversation " Will take the phone away" then made meeting with Curtis at lead meeting. Curtis asked me, " who told you to take the phone away" I pointed the supervisor anfolis, and anfolis denied it. Curtis ignore anfolis's comment from his denied. then decided to talk to me directly and you can't take the phone, period. i felt that accused wrongly as concertate more than anfolis's issue himself. after he said, I just doing my job and following whoever is high than me. i guess they are doing misinformation could lead to dangerous ( make them looks bad on a purpose.)

- About racially charged language as gangster or thug life, one of them talk as loudmouth about his pride front of me with his phone note in close personal which hurt my deaf culture visually and I pushed his hand back and start read " you noticed my shirt say " Thug life" and pride of it and even said " Thug doesn't work" as don't want to work. while he's laughing and I goes like as my body language "Okay" after this,  in my mind said " I don't care but why is he still here as worker none of them make sense from his conversation in first place" I guess that is his freedom of speech because we are public employees. after a day or week, he hasn't improved on assignments, and I caught him hiding a few times in the corner where I can't see to make sure he is doing his job. I texted him that some classroom and math lab need to be cleaned.  A few days later, still hasn't improved himself. he is using note type to me. why do you bother me? in my note type, I was doing my job, not target. then I decided to ignore him while he texted me which I don't have time to deal with and just doing his job. then more problems came in,

i decided to do more work myself and let him know that you make me look bad. I don't appreciate your doings. every time, he said he will improve, and he is keeping say over like every almost week I goes like Yeah...right, you are pride of thug life, **remember**? from his first conversation and his visually shirt say thug life. I was saying nothing about it, but he was loud to get my attention in the first place. there are some types of people in the world. I was one of them who have highly memorized from conversation, childhood, know their history after they made the comment in first place, etc.. that is my gift from god. I thank god for that part of education. They should be watching their mouth in the first place. that's why i explained to him as jog his memory from his first conversation that he was pride of thug which doesn't want to work as leave those room while I'm disciplining him often as just doing my job.  I have text comment if you want to see. I recommend you should. I never Racist against race.  Thug can be any race, but it doesn't affect the race behavior. it your brain to tell you to behavior or learn from movie or bad influencer on social media. doesn't matter what race. race doesn't affect behavior. just color white, black, Asian, etc. I need asl interpreter for that to explain better than my English is limited which my right to obtain asl interpreter.  I don't believe in race which i treated them as equal. a lot of people say that same thing. i just say thug, not race thug as example " Deaf Thug and Asian Thug" i didn't say that.  it is just " Thug" if I were him then I should watch my mouth so that would be going to take advantage of him that I or other will know about him. I don't care if he's joking or serious. I took that seriously and explained to me a lot that he couldn't work as don't want to work and looked at me as nothing but could be disability profiling.

- about touching people, I get a lot from people touching me because i can't hear as long as they understand our deaf culture as professional. same thing I did same thing to them because I can't speak, I have to touching the high arm or shoulder as tap to get their attention, not grab clothes as assault but I got assault by them as flirt from guy few times and sexually assault, not Hassarment from LGBT employees in first shift. I'm not saying the name if you want then to let me know in person. I keep saying no and I don't want to report anyone because I don't want to be a bad guy to yell in front of employee and think I'm only one the problem because of my disability from my past mistaken because none of them understand my Asl when I was talking. all they did was see my face as a problem and not willing to confront me and wanted to know. that's fine. i don't know how to explain this. need Asl interpreter. you have to understand the body language for touching, that's hearing world. What about the deaf world of culture? you need to learn that our culture. my interpreter touching me all the time and I did same thing. we have an understanding of how it works professionally but as hearing world, they use voice to get attention behind my back. for me, i can't. They have to touching me to get attention in professional. if touching people while they are having good time, that normal. they did it

to me same thing. i completely understand their body language. it signs of joy, not flirt in touching or speak or sign language. i didn't grab them but they did me and i let them because I'm so tired to make report and no one take my report seriously as job because of my disability? ok, that's fine. I felt as not equal and lack of understanding our culture in professional. hearing and deaf are different culture. hearing is relay voice and hear. deaf is visually and touching. What about down-syndrome and autisms, etc? They must have to good reason to do that.

- About calling them stupid, none of them understood my Asl in beginning but I did in note type with supervisor because one of them disability profiling on me as I can read them. body language is part of words from behavior.

I need an Asl interpreter in person for those lists or other. it's my right. Asl is my primary language, not English. Asl is not just fun, and it is not foreign language. it came from Native American in American. Every time, I written a report or complaint, and no one takes my report and written up seriously of me. that is unequal. I Believe that it hidden discriminably or Disability profiling or hate crime. it all same to me. Thank you for your time and consideration.

11006124
Salvo Di Ganci

P.S What about my respect, my right, equal for my disability and culture?

# EXHIBIT #7

| | |
|---|---|
| **From:** | Drew Burke |
| **To:** | Salvo Di Ganci; Cameron Evans |
| **Cc:** | Anthony Garcia; Val Peterson |
| **Subject:** | RE: Made an appeal |
| **Date:** | Tuesday, January 2, 2024 8:57:33 AM |

Salvo,

Thank you for your message and I hope you had a good holiday! Cameron Evans will contact you shortly about your request for an ASL interpreter to explain your appeal to Val Peterson and check in about your question with Duo Type.


Thanks,

Drew Burke
Senior Director - People and Culture
Utah Valley University
HF 120 | X5360 | drew.burke@uvu.edu

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Wednesday, December 27, 2023 12:32 PM
**To:** Drew Burke <Drew.Burke@uvu.edu>
**Cc:** Cameron Evans <Cameron.Evans@uvu.edu>; Anthony Garcia <Anthony.Garcia@uvu.edu>
**Subject:** Re: Made an appeal

I did. And no Katie palmer as asl interpreter. I have right to get another interpreter than Katie palmer. I don't appreciate her last time. It my right. It all in written appeal expect specific of asl Interpreter name. Please consider this to Cameron about I request asl interpreter specific ( no on Katie palmer).
Btw, Cameron forgot about my issue of duo type couple months ago from my report. I don't appreciate that delay too long or dimssive me or  irresponsibility I don't know. Thank you.


Salvo Di Ganci


Get Outlook for Android

**From:** Drew Burke <Drew.Burke@uvu.edu>
**Sent:** Tuesday, December 26, 2023 1:47:41 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Cameron Evans <Cameron.Evans@uvu.edu>; Anthony Garcia <Anthony.Garcia@uvu.edu>
**Subject:** RE: Made an appeal

Salvo,

Thank you for your email. Cameron Evans in People and Culture can arrange an

interpreter for you, and I have included him in this email to help make that process a little easier. Cameron will be back in the office on Tuesday, January 2, 2024. You must arrange for an interpreter to help you with your written appeal before the deadline of January 12, 2024. Please let me know if you have any other questions, and I'll be happy to help.


Thanks,

Drew Burke
Senior Director - People and Culture
Utah Valley University
HF 120 | X5360 | drew.burke@uvu.edu

---

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Sunday, December 24, 2023 10:52 PM
**To:** Drew Burke <Drew.Burke@uvu.edu>
**Subject:** Made an appeal

Drew,

I made an appeal two way to marylin and Val.  For Val,  I made an appeal to write. my english is limited because Asl is my primary language (america). I need Asl interpreter for that to explain than my english in wrtitten with VAl peterson. it is my right. I dont want Katie Palmer (asl interpreter) to participate in our meeting. it's my right too. use other Asl interpreter than Katie Palmer. Thank you.

P.S Asl is not just language. it more than than and my culture too.

11006124
Salvo Di Ganci

# EXHIBIT #8

| | |
|---|---|
| **From:** | Salvo Di Ganci |
| **To:** | Drew Burke; Cameron Evans |
| **Cc:** | Anthony Garcia; Val Peterson |
| **Subject:** | Re: Made an appeal |
| **Date:** | Tuesday, January 2, 2024 9:37:45 AM |

transcriber too. Thank you.

Get Outlook for Android

---

**From:** Drew Burke <Drew.Burke@uvu.edu>
**Sent:** Tuesday, January 2, 2024 8:57:30 AM
**To:** Salvo Di Ganci <11006124@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Cc:** Anthony Garcia <Anthony.Garcia@uvu.edu>; Val Peterson <PETERSVA@uvu.edu>
**Subject:** RE: Made an appeal

Salvo,

Thank you for your message and I hope you had a good holiday! Cameron Evans will contact you shortly about your request for an ASL interpreter to explain your appeal to Val Peterson and check in about your question with Duo Type.


Thanks,

Drew Burke
Senior Director - People and Culture
Utah Valley University
HF 120 | X5360 | drew.burke@uvu.edu

---

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Wednesday, December 27, 2023 12:32 PM
**To:** Drew Burke <Drew.Burke@uvu.edu>
**Cc:** Cameron Evans <Cameron.Evans@uvu.edu>; Anthony Garcia <Anthony.Garcia@uvu.edu>
**Subject:** Re: Made an appeal

I did. And no Katie palmer as asl interpreter. I have right to get another interpreter than Katie palmer. I don't appreciate her last time. It my right. It all in written appeal expect specific of asl Interpreter name. Please consider this to Cameron about I request asl interpreter specific ( no on Katie palmer).
Btw, Cameron forgot about my issue of duo type couple months ago from my report. I don't appreciate that delay too long or dimssive me or  irresponsibility I don't know. Thank you.


Salvo Di Ganci

Get Outlook for Android

**From:** Drew Burke <Drew.Burke@uvu.edu>
**Sent:** Tuesday, December 26, 2023 1:47:41 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Cameron Evans <Cameron.Evans@uvu.edu>; Anthony Garcia <Anthony.Garcia@uvu.edu>
**Subject:** RE: Made an appeal

Salvo,

Thank you for your email. Cameron Evans in People and Culture can arrange an interpreter for you, and I have included him in this email to help make that process a little easier. Cameron will be back in the office on Tuesday, January 2, 2024. You must arrange for an interpreter to help you with your written appeal before the deadline of January 12, 2024. Please let me know if you have any other questions, and I'll be happy to help.


Thanks,

Drew Burke
Senior Director - People and Culture
Utah Valley University
HF 120 | X5360 | drew.burke@uvu.edu

---

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Sunday, December 24, 2023 10:52 PM
**To:** Drew Burke <Drew.Burke@uvu.edu>
**Subject:** Made an appeal

Drew,

I made an appeal two way to marylin and Val.  For Val,  I made an appeal to write. my english is limited because Asl is my primary language (america). I need Asl interpreter for that to explain than my english in wrtitten with VAl peterson. it is my right. I dont want Katie Palmer (asl interpreter) to participate in our meeting. it's my right too. use other Asl interpreter than Katie Palmer. Thank you.

P.S Asl is not just language. it more than than and my culture too.

11006124
Salvo Di Ganci

# EXHIBIT #9

# EXHIBIT #10

**From:**      Salvo Di Ganci
**To:**         Cameron Evans; Drew Burke
**Cc:**         Anthony Garcia
**Subject:**   Re: Made an appeal
**Date:**      Thursday, January 4, 2024 11:15:05 AM
**Attachments:**  image001.png

No on Katie palmer. Get another asl Interpreter. I will get ubiu type back to you because three months wait too long and no update from you aboutI'm not happy right now. Thank you. Sorry.

Get Outlook for Android

**From:** Cameron Evans <Cameron.Evans@uvu.edu>
**Sent:** Wednesday, January 3, 2024 4:44:06 PM
**To:** Drew Burke <Drew.Burke@uvu.edu>; Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Anthony Garcia <Anthony.Garcia@uvu.edu>
**Subject:** RE: Made an appeal

Hi Salvo,

I can certainly assist with arranging an interpreter and transcriber for this meeting. Once I have the meeting date and time, I will submit the request to our outside vendor.

Let me know if you have any questions or anything I can do in the meantime.

Thank you,



CAMERON EVANS
**UTAH VALLEY UNIVERSITY**
*Assistant Director - Talent, Wellness, and Leaves*
*Human Resources / People and Culture*
Cameron.Evans@uvu.edu
PH: (801) 863-8389 / FX: (801) 863-5357

**From:** Drew Burke <Drew.Burke@uvu.edu>
**Sent:** Tuesday, December 26, 2023 1:48 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Cameron Evans <Cameron.Evans@uvu.edu>; Anthony Garcia <Anthony.Garcia@uvu.edu>
**Subject:** RE: Made an appeal
**Importance:** High

Salvo,

Thank you for your email. Cameron Evans in People and Culture can arrange an interpreter for you, and I have included him in this email to help make that process a little easier. Cameron will be back in the office on Tuesday, January 2, 2024. You must arrange for an interpreter to help you with your written appeal before the deadline of January 12,

2024. Please let me know if you have any other questions, and I'll be happy to help.


Thanks,

Drew Burke
Senior Director - People and Culture
Utah Valley University
HF 120 | X5360 | drew.burke@uvu.edu

---

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Sunday, December 24, 2023 10:52 PM
**To:** Drew Burke <Drew.Burke@uvu.edu>
**Subject:** Made an appeal

Drew,

I made an appeal two way to marylin and Val.  For Val,  I made an appeal to write. my english is limited because Asl is my primary language (america). I need Asl interpreter for that to explain than my english in wrtitten with VAl peterson. it is my right. I dont want Katie Palmer (asl interpreter) to participate in our meeting. it's my right too. use other Asl interpreter than Katie Palmer. Thank you.

P.S Asl is not just language. it more than than and my culture too.

11006124
Salvo Di Ganci

EXHIBIT #11

| | |
|---|---|
| **From:** | Drew Burke |
| **To:** | Anthony Garcia; Salvo Di Ganci |
| **Cc:** | Cameron Evans |
| **Subject:** | RE: Interpreter Request |
| **Date:** | Tuesday, January 9, 2024 7:57:51 PM |
| **Attachments:** | image002.png |
| | image003.png |

Everyone,

To clarify the purpose of the requested meeting, per Policy 335 – Staff Grievance, Salvo submitted his written appeal by email to Marilyn Meyer on December 21, 2023. A few days later, on December 24, 2023, during the University closure, Salvo sent me an email requesting a meeting with Vice President Val Peterson to explain his written appeal further.

Salvo submitted a written appeal, and per Policy 335, VP Peterson may meet with Salvo in person. However, VP Peterson is not required to meet with Salvo per Policy 335. As mentioned below, Salvo's options are as follows:

1. Meet with Val Peterson tomorrow at 1 pm with Katie Palmer as the interpreter.
2. Meet with Val Peterson tomorrow at 1 pm with Salvo's own interpreter.
3. Cancel the meeting with Val Peterson.

Regardless of which option Salvo chooses, VP Peterson, by Policy, must respond in writing to Salvo's written appeal no later than the end of the day on Monday, January 15, 2024. If Salvo chooses option three (3) and cancels the meeting tomorrow, VP Peterson will proceed with the appeal process with the information Salvo provided in his written appeal from December 21, 2023.


Thanks,

Drew Burke
Senior Director - People and Culture
Utah Valley University
HF 120 | X5360 | drew.burke@uvu.edu

---

**From:** Anthony Garcia <Anthony.Garcia@uvu.edu>
**Sent:** Tuesday, January 9, 2024 7:15 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Drew Burke <Drew.Burke@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Subject:** Re: Interpreter Request

Salvo,

No other date is possible.  I can only inform you of Val Peterson's availability. You requested this meeting and Val is willing to receive your appeal in person. This is not a typical practice and a meeting with the VP is not always possible. It is completely up to you if you want to take this

opportunity to express your appeal in person.  Your options listed below remain the same.

Regards,
Anthony

---

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Tuesday, January 9, 2024 6:33:21 PM
**To:** Anthony Garcia <Anthony.Garcia@uvu.edu>
**Subject:** Re: Interpreter Request

Can do on Jan 11th or Jan 12th? No school schedule on those days. I work everyday expect Wednesday at 3:30p.m.

Get Outlook for Android

---

**From:** Anthony Garcia <Anthony.Garcia@uvu.edu>
**Sent:** Tuesday, January 9, 2024 5:59:01 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Drew Burke <Drew.Burke@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Subject:** RE: Interpreter Request

Hi Salvo,

Val Peterson will not be able to meet with you next week as the deadline to submit his written decision is approaching (1/15/23). You submitted your written appeal on 12/21/23, and due to the campus closure Val could not consider the appeal until 1/2/24. Val has ten business days since campus opened again (1/2/24) to submit his written decision concerning the written warning. If you cannot meet with Val tomorrow at 1pm, you will not have another opportunity present your appeal face-to-face.

Also, I want to inform you UVU is not required to provide another interpreter when the only interpreter we have available is Katie Palmer. P&C made good faith efforts to accommodate your initial request, but ultimately, they were unsuccessful.

With that said, your options are as follows:

1.  Meet with Val Peterson tomorrow at 1pm with Katie Palmer as the interpreter.

2.  Meet with Val Peterson tomorrow at 1pm with your own interpreter.

3.  Cancel the meeting with Val Peterson.

Please let me know which option you will take.

Regards,



ANTHONY GARCIA
**UTAH VALLEY UNIVERSITY**
*Business Partner-Employee Relations*
*People & Culture*

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Tuesday, January 9, 2024 5:01 PM
**To:** Cameron Evans <Cameron.Evans@uvu.edu>
**Cc:** Anthony Garcia <Anthony.Garcia@uvu.edu>; Drew Burke <Drew.Burke@uvu.edu>
**Subject:** Re: Interpreter Request

No Katie palmer. Sorry. I have reason for that after I caught her as unprofessional. Then try next week if available. There always time for next week.

Get Outlook for Android

**From:** Cameron Evans <Cameron.Evans@uvu.edu>
**Sent:** Tuesday, January 9, 2024 4:40:25 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Anthony Garcia <Anthony.Garcia@uvu.edu>; Drew Burke <Drew.Burke@uvu.edu>
**Subject:** Interpreter Request

Hi Salvo,

I am just following up regarding your upcoming meeting with Val Peterson.

I have reached out to both of our outside interpreter vendors (ASL Communications and 5 Star Interpreting) to request an interpreter. They have tried to find an available interpreter, but unfortunately, they do not have anyone available at the time of this meeting. Because they do not have anyone available, I needed to reach out to our internal team so we can make sure you have an interpreter. Due to the first week of the semester, the only interpreter available at the time of the meeting is Katie Palmer. Katie will be there to provide ASL interpretation for you. I have also scheduled a transcriber to be available for this meeting. This transcriber will type the conversation and you will be able to see it in real-time as well as provide a written copy to you at the conclusion of the meeting.

We did try to accommodate your preferences, but due to a lack of availability, we had to go forward with the resources we have available. Hopefully, having the transcriber provide real-time captioning will help you confirm that nothing is being lost in translation. If you have your own interpreter you would like to accompany you to this meeting instead of using our internal services please feel free to do so.

Thank you,

# EXHIBIT #12

| | |
|---|---|
| **From:** | Salvo Di Ganci |
| **To:** | Anthony Garcia |
| **Subject:** | Re: Interpreter Request |
| **Date:** | Tuesday, January 9, 2024 6:19:27 PM |
| **Attachments:** | image001.png |
| | image002.png |

Tomorrow at 1pm is my school schedule. Want me to cut that class on purpose for them?

Get Outlook for Android

---

**From:** Anthony Garcia <Anthony.Garcia@uvu.edu>
**Sent:** Tuesday, January 9, 2024 5:59:01 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Drew Burke <Drew.Burke@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Subject:** RE: Interpreter Request

Hi Salvo,

Val Peterson will not be able to meet with you next week as the deadline to submit his written decision is approaching (1/15/23). You submitted your written appeal on 12/21/23, and due to the campus closure Val could not consider the appeal until 1/2/24. Val has ten business days since campus opened again (1/2/24) to submit his written decision concerning the written warning. If you cannot meet with Val tomorrow at 1pm, you will not have another opportunity present your appeal face-to-face.

Also, I want to inform you UVU is not required to provide another interpreter when the only interpreter we have available is Katie Palmer. P&C made good faith efforts to accommodate your initial request, but ultimately, they were unsuccessful.

With that said, your options are as follows:

1. Meet with Val Peterson tomorrow at 1pm with Katie Palmer as the interpreter.

2. Meet with Val Peterson tomorrow at 1pm with your own interpreter.

3. Cancel the meeting with Val Peterson.

Please let me know which option you will take.

Regards,



ANTHONY GARCIA
**UTAH VALLEY UNIVERSITY**
*Business Partner-Employee Relations*
*People & Culture*

EXHIBIT #13

| | |
|---|---|
| **From:** | Salvo Di Ganci |
| **To:** | Anthony Garcia |
| **Subject:** | Re: Interpreter Request |
| **Date:** | Tuesday, January 9, 2024 6:33:23 PM |
| **Attachments:** | image001.png |
| | image002.png |

---

Can do on Jan 11th or Jan 12th? No school schedule on those days. I work everyday expect Wednesday at 3:30p.m.

Get Outlook for Android

---

**From:** Anthony Garcia <Anthony.Garcia@uvu.edu>
**Sent:** Tuesday, January 9, 2024 5:59:01 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Drew Burke <Drew.Burke@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Subject:** RE: Interpreter Request

Hi Salvo,

Val Peterson will not be able to meet with you next week as the deadline to submit his written decision is approaching (1/15/23). You submitted your written appeal on 12/21/23, and due to the campus closure Val could not consider the appeal until 1/2/24. Val has ten business days since campus opened again (1/2/24) to submit his written decision concerning the written warning. If you cannot meet with Val tomorrow at 1pm, you will not have another opportunity present your appeal face-to-face.

Also, I want to inform you UVU is not required to provide another interpreter when the only interpreter we have available is Katie Palmer. P&C made good faith efforts to accommodate your initial request, but ultimately, they were unsuccessful.

With that said, your options are as follows:

1. Meet with Val Peterson tomorrow at 1pm with Katie Palmer as the interpreter.

2. Meet with Val Peterson tomorrow at 1pm with your own interpreter.

3. Cancel the meeting with Val Peterson.

Please let me know which option you will take.

Regards,



ANTHONY GARCIA
**UTAH VALLEY UNIVERSITY**
*Business Partner-Employee Relations*
*People & Culture*

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Tuesday, January 9, 2024 5:01 PM
**To:** Cameron Evans <Cameron.Evans@uvu.edu>
**Cc:** Anthony Garcia <Anthony.Garcia@uvu.edu>; Drew Burke <Drew.Burke@uvu.edu>
**Subject:** Re: Interpreter Request

No Katie palmer. Sorry. I have reason for that after I caught her as unprofessional. Then try next week if available. There always time for next week.

Get Outlook for Android

---

**From:** Cameron Evans <Cameron.Evans@uvu.edu>
**Sent:** Tuesday, January 9, 2024 4:40:25 PM
**To:** Salvo Di Ganci <11006124@uvu.edu>
**Cc:** Anthony Garcia <Anthony.Garcia@uvu.edu>; Drew Burke <Drew.Burke@uvu.edu>
**Subject:** Interpreter Request

Hi Salvo,

I am just following up regarding your upcoming meeting with Val Peterson.

I have reached out to both of our outside interpreter vendors (ASL Communications and 5 Star Interpreting) to request an interpreter. They have tried to find an available interpreter, but unfortunately, they do not have anyone available at the time of this meeting. Because they do not have anyone available, I needed to reach out to our internal team so we can make sure you have an interpreter. Due to the first week of the semester, the only interpreter available at the time of the meeting is Katie Palmer. Katie will be there to provide ASL interpretation for you. I have also scheduled a transcriber to be available for this meeting. This transcriber will type the conversation and you will be able to see it in real-time as well as provide a written copy to you at the conclusion of the meeting.

We did try to accommodate your preferences, but due to a lack of availability, we had to go forward with the resources we have available. Hopefully, having the transcriber provide real-time captioning will help you confirm that nothing is being lost in translation. If you have your own interpreter you would like to accompany you to this meeting instead of using our internal services please feel free to do so.

Thank you,

*Upcoming out of office 01/11/24 – 01/22/24*

CAMERON EVANS
**UTAH VALLEY UNIVERSITY**
*Assistant Director - Talent, Wellness, and Leaves*

# EXHIBIT #14

| From: | Anthony Garcia |
|---|---|
| To: | Salvo Di Ganci; Curtis Hall |
| Cc: | Drew Burke; Cameron Evans |
| Subject: | RE: Meeting Change |
| Attachments: | image001.png |

Salvo,

I'm sorry you feel hurt, but we were not able to secure a transciber with your requested schedule change and Katie Palmer is the only interpreter we currently have available. Good faith efforts were made to accommodate your requests, but we can only provide what is available.

From what I understand from your message, you do not plan on attending the meeting. Since you do not plan on attending, we will cancel the meeting and Val Peterson will make his final determination based on the appeal you submitted on 12/21/23.

Regards,
Anthony

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Wednesday, January 10, 2024 10:52 AM
**To:** Anthony Garcia <Anthony.Garcia@uvu.edu>; Curtis Hall <HALLCUR@uvu.edu>
**Cc:** Drew Burke <Drew.Burke@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Subject:** Re: Meeting Change

My plan is at 3p.m. with different asl Interpreter and transcriber but It doesn't match my plan. No. It hurt me.

Get Outlook for Android

**From:** Anthony Garcia <Anthony.Garcia@uvu.edu>
**Sent:** Wednesday, January 10, 2024 10:46:41 AM
**To:** Salvo Di Ganci <11006124@uvu.edu>; Curtis Hall <HALLCUR@uvu.edu>
**Cc:** Drew Burke <Drew.Burke@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Subject:** RE: Meeting Change

Salvo,

Your response is unclear. Do you plan to attend the meeting at 3pm as described below?

Regards,
Anthony

**From:** Salvo Di Ganci <11006124@uvu.edu>
**Sent:** Wednesday, January 10, 2024 10:40 AM

**To:** Anthony Garcia <Anthony.Garcia@uvu.edu>; Curtis Hall <HALLCUR@uvu.edu>
**Cc:** Drew Burke <Drew.Burke@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Subject:** Re: Meeting Change

Too late. Good-bye. It hurt me by everything.

Get Outlook for Android

---

**From:** Anthony Garcia <Anthony.Garcia@uvu.edu>
**Sent:** Wednesday, January 10, 2024 10:24:31 AM
**To:** Salvo Di Ganci <11006124@uvu.edu>; Curtis Hall <HALLCUR@uvu.edu>
**Cc:** Drew Burke <Drew.Burke@uvu.edu>; Cameron Evans <Cameron.Evans@uvu.edu>
**Subject:** Meeting Change

Hi Salvo,

Val Peterson can meet with you at 3pm today instead of 1pm. However, due to the change, we wont be able to provide a transciber, but Katie Palmer can still be there to translate.

Would you like to meet with Val at 3pm?

@Curtis, could you accommodate this meeting into Salvo's work schedule if he chooses to attend?

Regards,



ANTHONY GARCIA
**UTAH VALLEY UNIVERSITY**
*Business Partner-Employee Relations*
*People & Culture*

EXHIBIT #15





2 things.
Today we are having a great shakeout exercise. At 10:30 pm you and your team will meet at the emergency location, then you will provide with the instructions that are on this paper. You should communicate with your team members in the beginning of the 2nd shift and let them read this paper as well (and leave it visible in your closet). Once you text me that everybody has exited the building and you met them, I will give you a heads up and you can

RCS message

Artur Kuzmin (North S...

Isaac will bring us some pizzas and sodas, and if you want you can have a gathering with your team and watch a movie or play some games. But this is not a department party. Basically, Isaac will give us pizzas and he doesn't mind if instead of continuing the work after eating you can have a local little party.

How can I communicate with my team member? Must provide asl Interpreter because I'm the leader and my

RCS message

