**IN THE UNITED STATES DISTRICT COURT**
**THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| SALVATORE DIGANCI,<br><br>Plaintiff,<br>v.<br><br>UTAH VALLEY UNIVERSITY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [24] DEFENDANT'S MOTION TO DISMISS**<br><br>Case No: 2:25-cv-00340-CMR<br><br>Chief Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to Chief Magistrate Judge Cecilia M. Romero conducting all proceedings, including entry of final judgment (ECF 8). 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Defendant Utah Valley University's (Defendant or UVU) Motion to Dismiss (Motion) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF 24). Having considered the Motion, Plaintiff Salvatore Diganci's (Plaintiff or Mr. Diganci) Opposition (Opposition) (ECF 28), and Defendant's Reply in Support (Reply) (ECF 29), the court finds that oral argument on the Motion is not necessary. *See* DUCivR 7-1(g). For the reasons set forth below, the court GRANTS IN PART the Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff initiated this suit on May 1, 2025 (ECF 1 or Compl.). This case concerns Mr. Diganci's accommodation requests and employment relations with UVU (*id.* ¶¶ 34–55). Mr. Diganci is deaf and bilingual in English and American Sign Language (ASL) (*id.* ¶ 1). He does not use hearing aids, cochlear implants, or other personal amplification devices for hearing (*id.*). Mr. Diganci is a student at UVU, a public university in Utah, and has worked at UVU in its Custodial Services department since February 1, 2023 (*id.* ¶¶ 1, 33–35, 54–55).

On December 20, 2023, Mr. Diganci, then lead janitor, received a written warning for unprofessional behavior and inappropriate touching (*id.* ¶ 35–36). Pursuant to UVU's Policies and Procedures (UVU Policy) (ECF 1-1 at 19–29), Mr. Diganci appealed the written warning and requested an Appeal Meeting with Vice President Val Peterson (Vice President or Val Peterson) (Compl. ¶¶ 37–38). After his appeal was received, Mr. Diganci emailed UVU staff and requested via email an ASL translator and a transcriber for the Appeal Meeting (*id.* ¶ 39; ECF 1-1 at 31–56). In Mr. Diganci's emails he stated, "I do not want Katie Palmer (asl [sic] interpreter) (Ms. Palmer)," and "use other [sic] Asl [sic] interpreter than Katie Palmer" (ECF 1-1 at 37). In these email communications, UVU Assistant Director Cameron Evans (Mr. Evans) informed Mr. Diganci that UVU would assist in arranging an interpreter and a transcriber once a time was set (Compl. ¶ 41).

The Appeal Meeting was set for January 10, 2024.[1] Thereafter, Mr. Evans emailed Mr. Diganci saying that he contacted both of UVU's outside vendors for ASL translators. UVU was unable to find a translator for the meeting time (*id.* ¶ 42). Mr. Evans stated that a transcriber would be present, but Ms. Palmer would be the translator because no vendor or other school ASL translator was available at the time of the meeting (*id.*). Mr. Diganci replied, "No Katie Palmer" (*id.* ¶ 43). Mr. Diganci tried to reschedule for January 11 or 12, but the Vice President could not meet on any date other than January 10, 2024 (*id.* ¶ 45Mr. Diganci did not attend the Appeal Meeting scheduled for January 10, 2024 (*id.*). The Vice President affirmed disciplinary action for the written warning, which made Mr. Diganci ineligible for merit pay for the year but otherwise did not affect his position, rate of pay, or other terms of employment (*id.* ¶ 46).

---

[1] Although Plaintiff states the meeting was January 9, 2024 (ECF 1 ¶ 45), exhibits and other sections of the Complaint make it clear that the meeting was January 10, 2024 (ECF 1-1 at 50). When referring to the date of the Appeal Meeting, the court will reference January 10, 2024 as the date of the meeting.

On February 13, 2024, Mr. Diganci applied for the position of Facilities Services Technician (*id.* ¶ 47). Mr. Diganci's job application was reviewed, and he was interviewed with an interpreter present (*id.*). Mr. Diganci asserts that "unlawful interview questions may have been asked at the job interview" (*id.*). Mr. Diganci was not hired for the position (*id.*). Since these events, Mr. Diganci has allegedly experienced other unidentified instances of disability discrimination from UVU's refusal or inability to provide ASL interpreters for meetings or trainings with management, staff members, or co-workers (*id.* ¶¶ 54–55).

**B. Plaintiff's Claims and the Present Motion**

In the Complaint, Plaintiff asserts fifteen causes of action (Compl. ¶¶ 56–218).[2] The causes of action are for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, (the First Cause of Action is under Title I, the Second through Fifth Causes of Action are under Title II, and the Sixth through Ninth Causes of Action are under Title III); violations of Section 504 of the Rehabilitation Act, 42 U.S.C. § 794, (the Tenth Cause of Action); a claim under 42 U.S.C. § 1983 for a violation of the due process clause of the Fourteenth Amendment (the Eleventh Cause of Action); Utah State Due Process claim (the Twelfth Cause of Action); breach of contract, breach of implied contract, and breach of implied covenant of good faith and fair dealing (the Thirteenth through Fifteenth Causes of Action) (Compl. ¶¶ 56–218). Plaintiff's requested relief includes: declaratory relief, equitable relief, compensatory damages, punitive damages, and attorney's fees (*id.* at 47–49).

Defendant filed the instant Motion seeking dismissal of the Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) (ECF 24 at

[2] Plaintiff mislabeled the Fourteenth and Fifteenth Causes of Action as the Thirteenth and Fourteenth, respectively (*see* Compl. ¶¶ 197–218). Accordingly, when referring to the causes of action by number, the court will refer to the breach of implied contract claim (*id.* ¶¶ 197–208) as the Fourteenth Cause of Action, and the breach of implied covenant of good faith and fair dealing claim (ECF 1 ¶¶ 209–218) as the Fifteenth Cause of Action.

8–9). The core argument of Defendant's Motion is that UVU has sovereign immunity or is otherwise not a proper defendant for ADA violations (ECF 24 at 8–9).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

Defendant seeks dismissal of the First, Eleventh, and Twelfth Causes of Action under Rule 12(b)(1) (ECF 24 at 8–9). A motion to dismiss under Rule 12(b)(1) seeks dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts "presume no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction." *U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992) (citing *Penteco Corp. v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991)). The burden of establishing subject-matter jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff must "'allege in [its] pleading the facts essential to show jurisdiction,' and 'must support [those facts] by competent proof.'" *U.S. ex rel. Precision Co.*, 971 F.2d at 551 (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

### B. Rule 12(b)(6) Standard

Defendant seeks dismissal of the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Thirteenth, Fourteenth, and Fifteenth Causes of Action under Rule 12(b)(6) (ECF 24 at 8–9). A motion to dismiss under Rule 12(b)(6) seeks dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, a court assumes the truth of well-pleaded facts and draws reasonable inferences in the light most favorable to the plaintiff. *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "A plaintiff must allege sufficient facts to 'nudge[] [his] claims . . . across the line from conceivable to plausible.'" *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1158 (10th Cir. 2021) (citing *Iqbal*, 556 U.S. at 680). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Plaintiff Fails to Establish Subject Matter Jurisdiction with Respect to His Claims Under Title I of the ADA.

Plaintiff's First Cause of Action is a violation of Title I of the ADA (Compl. ¶¶ 56–75). UVU is the only defendant in this case (*see id.*). Defendant argues in the Motion that Plaintiff is barred from bringing suit under Title I because UVU is a state agency, the state has not waived its sovereign immunity, and Congress has not abrogated sovereign immunity for Title I (ECF 24 at 14–16). Plaintiff admits sovereign immunity applies to Title I but argues that sovereign immunity does not extend to state officials sued in their official capacity under the *Ex parte Young* doctrine (ECF 28 at 4–7). *See Ex parte Young*, 209 U.S. 123 (1908).

"The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *K.A. v. Barnes*, 134 F.4th 1067, 1073 (10th Cir. 2025) (quoting *Good v. Dep't of Educ.*, 121 F.4th 772, 788 (10th Cir. 2024)). This bar is jurisdictional. *Id.* "It encompasses not just suits against the State itself but also suits against

'governmental entities that are arms of the state.'" *Id*. (quoting *Good*, 121 F4th 789). The exceptions are:

> [1] First, a state may consent to suit in federal court.
> [2] Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment.
> [3] Finally, under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Levy v. Kan.Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168–69 (10th Cir. 2015). First, "cases have consistently found state universities are arms of the state." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575 (10th Cir. 1996). Plaintiff does not dispute that UVU is an arm of the state (ECF 28 at 4–7). Furthermore, no one contends that the State of Utah has consented to suit in federal court, and it has been held that Congress did not intend to abrogate sovereign immunity under Title I of the ADA. *See Bd. Of Trustees of Univ. of Ala.v. Garrett*, 531 U.S. 356, 363–74 (2001).

Plaintiff does not dispute these arguments (ECF 28 at 4–7). Plaintiff argues that "[u]nder the doctrine of *Ex parte Young*, Eleventh Amendment immunity does not extend to a state official sued in his official capacity when the plaintiff seeks only prospective, injunctive [or declaratory relief" (*id.* at 5). This argument fails, however, because UVU is the only defendant in this case and Plaintiff has not sued any state officials (*see* Compl.).[3] Further, when reviewing a motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained in the complaint, not what is alleged in a response. *See Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

---

[3] What the argument does make clear is that it is not likely futile to amend, should Plaintiff amend to sue state officials in their official capacity for prospective relief.

Therefore, the court finds it does not have subject matter jurisdiction over Plaintiff's claim under Title I of the ADA. Accordingly, the court dismisses Plaintiff's First Cause of Action without prejudice pursuant to Rule 12(b)(1).

**B. Plaintiff's Claims Under Title II of the ADA Fail to State a Claim Because Title II Does Not Contain an Independent Cause of Action for Employment Discrimination.**

Plaintiff's Second, Third, Fourth, and Fifth Causes of Action allege violations of Title II of the ADA (collectively, Title II Claims) (Compl. ¶¶ 76–106). Defendant argues in the Motion that UVU is not a proper defendant for the Title II Claims because each of these claims is based on Plaintiff's employment relationship with UVU and Title II of the ADA does not cover employment relationships with public entities (ECF 24 at 16–17). Plaintiff contends that Title II covers employment relationships (ECF 28 at 7–9).

The Supreme Court has stated that, "[the ADA] forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004). Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As Defendant has argued in its Motion (ECF 24 at 9–10), "[e]mploying people isn't a service, program, or activity the university provides: it is a means or method the university uses to provide its services, programs, and activities. On this much, nearly every court to have faced the question agrees, holding the plain language of the first clause of § 12132 does *not* reach employment." *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303, 1306 (10th Cir. 2012) (collecting cases) (affirming district court's dismissal of plaintiff's employment

discrimination claims under Title II of the ADA). This presents a prima facie issue for Plaintiff since the facts alleged in the Complaint relate exclusively to his relationship with UVU in his capacity as an employee (*see* Compl. ¶¶ 76–106).

Plaintiff replies that Title II of the ADA "prohibits public entities such as UVU from engaging in employment discrimination" (ECF 28 at 7). In support of this contention, Plaintiff quotes 28 C.F.R. § 35.140, which states: Title II of the ADA specifically states that "no qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity" (ECF 28 at 7 (quoting 28 C.F.R. § 35.140)). However, 28 C.F.R. § 35.140 makes clear that employment discrimination claims are properly brought under Title I of the ADA—"the requirements of title I of the Act, as established by the regulations of the Equal Employment Opportunity Commission in 29 CFR part 1630, apply to employment in any service, program, or activity conducted by a public entity if that public entity is also subject to the jurisdiction of title I." *Id.* Plaintiff cites no case law or language supporting employment discrimination claims under Title II of the ADA. Defendant, on the other hand, cites multiple cases dismissing or affirming dismissal of employment-related claims brought under Title II (ECF 24 at 16–17). *See e.g.*, *Elwell*, 693 F.3d at 1316.

Plaintiff additionally argues that his Fourteenth Amendment rights were violated, and that he has claims under Title II because, "Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment," and "Title II validly abrogates state sovereign immunity" (ECF 28 at 10 (quoting *U.S. v. Georgia*, 546 U.S. 151, 159 (2006)). But sovereign immunity under Title II is not at issue. Additionally, if there is a cause of action for damages against states for conduct which violates the Fourteenth Amendment, that does

not entail that any conduct that violates the Fourteenth Amendment may be the basis of a cause of action brought under Title II of the ADA—the conduct violating the Fourteenth Amendment must also be prohibited conduct under Title II. *See U.S. v. Georgia*, 546 U.S. at 152 (directing the lower court to address "which aspects of the [defendant's] alleged conduct violated Title II," and then to address "to what extent such misconduct also violated the Fourteenth Amendment"). Plaintiff has failed to allege conduct violating Title II, and he cites no cases in which an employment discrimination claim was successfully brought as a violation of Title II (ECF 28 at 7–12). Accordingly, Plaintiff's arguments regarding the violation of his rights under the Fourteenth Amendment are unavailing.

In light of the above analysis, the court finds that Plaintiff's Second, Third, Fourth, and Fifth Causes of Action fail to state a claim because Title II of the ADA does not provide an independent cause of action for employment discrimination claims. Accordingly, the Title II Claims are dismissed without prejudice.

**C. Plaintiff's Claims Under Title III of the ADA Fail to State a Claim Because Title III Does Not Cover State Universities.**

Plaintiff's Sixth, Seventh, Eighth, and Ninth Causes of Action allege violations of Title III of the ADA (collectively, Title III Claims) (Compl. ¶¶ 107–152). Defendant argues that the court should dismiss Plaintiff's Title III Claims because UVU is not a private entity or nonprofit organization subject to Title III (ECF 24 at 10–11). Plaintiff did not provide a counterargument in its Opposition (*see* ECF 28).

Title III of the ADA prohibits certain forms of discrimination by "any place of public accommodation." 42 U.S.C. § 12182(a). For purposes of § 12182, a place of public accommodation is a limited set of "private entities" that are not a "public entity" under § 12131. *Id.* § 12181(6)–(7). Under § 12131, a public entity includes "any State or local government," and

"any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* § 12131(1). Defendant has argued it is an arm of the state and Plaintiff has not attempted to refute the contention (ECF 24 at 8–9). In fact, Plaintiff appears to admit this itself (ECF 28 at 17 ("Brigham Young University is a **private** [sic] university which means they must comply with Title III of the ADA whereas Utah Valley University is a **public** [sic] university and must comply with Title II of the ADA.")).[4]

Consequently, the court finds that Plaintiff's Sixth, Seventh, Eighth, and Ninth Causes of Action fail to state a claim because UVU is not a private entity subject to Title III of the ADA. Therefore, the court dismisses the Title III Claims without prejudice.

**D. Plaintiff's Rehabilitation Act Claim is Dismissed to the Extent It Incorporates Allegations Unrelated to the Appeal Meeting.**

Plaintiff's Tenth Cause of Action is brought under the Rehabilitation Act (Compl. ¶¶ 153–171). *See* 29 U.S.C. § 794. Specifically, Plaintiff alleges that Defendant violated the Rehabilitation Act by (1) refusing to provide a qualified or alternative interpreter for the appeal meeting, (2) refusing to provide interpreters during meetings and trainings with staff, coworkers, and other UVU employees, and (3) asking "illegal" interview questions (Compl. ¶ 159). With respect to the first allegation, Defendant argues that Plaintiff cannot show that UVU did not provide a reasonable accommodation (ECF 24 at 19). With respect to the second and third allegations, Defendant argues they are not well pled because they are vague and conclusory (*id.* at 23).

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

[4] Another reason to dismiss Plaintiff's Title III Causes of Action is that, as before, Plaintiff's allegations relate solely to Mr. Diganci's employment relationship with UVU, and employment discrimination claims are properly brought under Title I of the ADA, not Title II or III. *See supra*, Section IV(B).

activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "The standards used to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act." *Id.* § 794(d). For Title I ADA failure-to-accommodate claims, the Tenth Circuit requires that the plaintiff show (1) plaintiff is disabled, (2) plaintiff is "otherwise qualified" for the position in which it serves, (3) plaintiff requested a "plausibly reasonable accommodation," and (4) the program or activity "refused to accommodate [plaintiff's] disability." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020).

The Complaint alleges, and the court assumes as true for the purposes of this Motion, that Defendant is subject to the Rehabilitation Act, Mr. Diganci is a disabled person and is qualified for his position under the Rehabilitation Act (Compl. ¶¶ 1, 5, 34–35, 154). The question is whether Mr. Diganci has sufficiently alleged that he requested a reasonable accommodation and whether UVU refused to provide it.

1. <u>The Appeal Meeting</u>

Under the ADA, a reasonable accommodation includes "the provision of qualified readers or interpreters." 42 U.S.C. § 12111(9)(B). Here, the Complaint alleges two theories regarding Defendant's failure to accommodate regarding the Appeal Meeting. First, Plaintiff alleges that Defendant discriminated against him by "refusing to provide a certified and qualified ASL interpreter" (Compl. ¶ 159). Second, in the alternative or in addition to the former, Defendant failed to provide an "alternative qualified ASL interpreter" for the Appeal Meeting (*id.*).

Regarding Ms. Palmer's qualifications as an interpreter, or lack thereof, Plaintiff alleges that he had "concerns about [Ms. Palmer's] skills and ethics" (Compl. ¶¶ 113, 123). And in Plaintiff's email requesting a different interpreter, he stated that he didn't "appreciate [Ms. Palmer]

last time" (ECF 1-1 at 36, or Compl. Ex. 7). Further, the Complaint asserts that Plaintiff believed Ms. Palmer was "not ethical as an ASL interpreter" and that "she [lacked] the skills to be a good interpreter" (Compl. ¶ 2). Defendant provides no arguments regarding Plaintiff's allegations regarding Ms. Palmer's qualifications as an interpreter (*see generally* ECF 24 19–15). Because Defendant has provided no argument regarding this assertion, and Plaintiff has alleged that Defendant failed to provide a qualified interpreter, Plaintiff has alleged sufficient allegations at this stage, and this first theory is therefore not dismissed.

The second theory regarding the alleged refusal to provide an alternative interpreter is more complicated. Put simply, Plaintiff requested any interpreter other than Ms. Palmer (ECF 1-1 at 37). While the Complaint alleges that Defendant did attempt to find a different interpreter besides Ms. Palmer, and that there would be a transcriber providing real-time captioning, it appears Defendant refused to reschedule the meeting for another date so that an interpreter other than Ms. Palmer could be found (Compl. ¶¶ 41–45; ECF 1-1 at 50). At this early stage, Plaintiff has alleged plausible allegations that by refusing to reschedule the appeal meeting to find a new interpreter, Defendant thereby refused to provide a reasonable accommodation.

Defendant further argues that the request for another interpreter was not reasonable, because "a reasonable accommodation does not necessarily equate to the employee's preferred accommodation" (ECF 24 at 22 (citing *Selk v. Brigham Young Univ.*, No. 2:13-CV-00326-CW, 2015 WL 150250, at *6 (D. Utah Jan. 12, 2015) (At the summary judgment stage court found "Defendant was obligated, under the ADA, to provide Plaintiff with a reasonable accommodation, not necessarily with his preferred accommodation."); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (At the summary judgment stage, court found "an employer is not required to always provide the employee with the best possible accommodations or in the specific

manner the employee requested.... It has broad discretion in determining which alternative accommodation should be provided."); *Fletcher v. Discover Fin. Servs.*, No. 2:20-CV-00512, 2022 WL 3705467, at *6 (D. Utah Aug. 26, 2022) (At the summary judgment stage, court found "an employee is not entitled to her preferred accommodation or even the best accommodation; an employer need only offer a reasonable accommodation"))).

Although Defendant correctly states that it is obligated to provide Plaintiff with a "reasonable accommodation," not the accommodation of Plaintiff's choice, taking all facts in the light most favorable to Plaintiff, the Complaint plausibly alleges that by failing to provide an alternative interpreter, Defendants failed to provide a reasonable accommodation. Whether Defendant did, in fact, provide a reasonable accommodation is a question that cannot be resolved at the motion to dismiss stage.

Therefore, the court denies Defendant's Motion regarding the request to dismiss Plaintiff's Tenth Cause of Action in so far as it relates to the Appeal Meeting (*i.e.*, Plaintiff's allegations regarding Ms. Palmer's qualifications, and his request for an interpreter other than Ms. Palmer).

2. Interpreter During Other Meetings and Trainings

Plaintiff alleges that Defendant failed to provide an ASL interpreter for "meetings, trainings with staff, coworkers, and other UVU employees" (Compl. ¶ 159). As Defendant correctly articulates, Plaintiff has not sufficiently pled a failure to provide a reasonable accommodation in each of these instances, as any reference to such instances is vague and conclusory (*see id.* ¶¶ 14, 54, 159, 164–69). To the extent that Plaintiff is asserting a failure to accommodate claim due to failure to provide an ASL interpreter during various work meetings and trainings, such claims are dismissed for failure to state a claim.

3. Application for Facilities Services Technician

In addition to the January 10, 2024, meeting and additional staff meetings, Plaintiff alleges Defendant violated the Rehabilitation Act by "asking illegal interview questions by reason of his Deafness" (Compl. ¶ 166). Defendant argues that the claim is not well-pled because calling interview questions "illegal," without further information, is a legal conclusion, not a factual allegation (ECF 24 at 23).

With regard to a failure to hire or promote, "[t]o establish a prima facie case of disability discrimination, [Plaintiff] is required to show (1) he has a "disability" within the meaning of the Americans with Disabilities Act; (2) he was qualified, with or without reasonable accommodation, to perform the essential job functions of the position he sought; and (3) his employer refused the promotion under circumstances which give rise to an inference the decision was based on his disability." *Rakity v. Dillon Co.*, 302 F.3d 1152, 1164 (10th Cir. 2002). As Defendant has pointed out, Plaintiff has failed to allege that he was qualified to perform the essential job functions of a Facilities Services Technician (Compl. ¶¶ 153–171; ECF 24 at 23). Furthermore, Plaintiff does not sufficiently allege that UVU refused to hire him based on his disability (*id.*). Plaintiff has provided no context or description of the supposedly illegal interview questions, and calling the interview questions "illegal" is a legal conclusion, not a factual allegation (*id.*). Therefore, the court grants Defendant's Motion as to the request to dismiss Plaintiff's Tenth Cause of Action in so far as it relates to failure to hire or promote Plaintiff to the position of Facilities Services Technician.

**E. Plaintiff's 42 U.S.C. § 1983 Claims Are Dismissed.**

Plaintiff's Eleventh Cause of Action brings a claim under 42 U.S.C. § 1983 for a violation of the due process clause of the Fourteenth Amendment (Compl. ¶¶ 172–178). *See* 42. U.S.C. § 1983. Defendant argues that § 1983 only applies to "persons," and UVU, as an arm of the state, is

not a person (ECF 24 at 25). Plaintiff does not reject Defendant's contention and instead asks the court for leave to amend the Complaint (ECF 28 at 19). However, under District of Utah Civil Rule 7-1(a)(3), "[a] party may not make a motion . . . in a response or reply." DUCivR 7-1(a)(3). Therefore, Plaintiff's Eleventh Cause of Action is dismissed, and the request for leave to amend the Complaint will not be considered. Plaintiff may file a motion for leave to amend that complies with the local rules if he wishes to do so.

**F. Sovereign Immunity Bars Plaintiff's Cause of Action Against UVU for Violation of Utah's Due Process Clause.**

Plaintiff's Twelfth Cause of Action is brought under Article I § 7 of the Utah Constitution (Utah's Due Process Clause) (Compl. ¶¶ 179–185). *See* Utah Const. art. I, § 7. Defendant argues the Twelfth Cause of Action should be dismissed because it is barred by sovereign immunity, and even if sovereign immunity did not apply, Plaintiff has failed to adequately allege that Utah's Due Process Clause was violated (ECF 24 at 25–28). Plaintiff replies that he has adequately pled a violation of Utah's Due Process Clause, and he claims sovereign immunity does not apply because Article I Section 7 of the Utah Constitution is self-executing and judicially enforceable (ECF 28 at 20). The court does not deem it necessary to address whether this claim has been adequately pled because it finds that sovereign immunity bars the cause of action.

On the doctrine of sovereign immunity, the Supreme Court of Utah has stated that "in the absence of either express constitutional or statutory authority an action against a sovereign state cannot be maintained. The doctrine is elementary and of universal application." *Wilkinson v. State*, 134 P. 626, 630 (Utah 1913). As this court has recently summarized, "while actions for money damages against municipalities and individual state employees and officers for their violations of Utah's Constitution may sometimes be permissible, the State of Utah has not waived and still

retains its sovereign immunity for almost all state constitutional violations." *Davey v. Blood*, No. 2:23-cv-442, 2024 WL 3728072, at *6 (D. Utah Aug. 7, 2024).

In response, Plaintiff points out that Utah's Due Process Clause "is self-executing and judicially enforceable" (ECF 28 at 20). *See Spackman ex rel. Spackman v. Bd. Of Educ. Of Box Elder County Sch. Dist.*, 2000 UT 87, ¶ 27, 16 P.3d 533, 539. Plaintiff's argument is misplaced. Whether a constitutional provision is self-executing and whether the State has waived its sovereign immunity are distinct questions. Although *Spackman* held that the Due Process Clause may be judicially enforced without implementing legislation, it expressly cautioned that "a self-executing constitutional provision does not necessarily give rise to a damages suit." *Id.* ¶¶ 7, 18. Moreover, *Spackman* involved a local school board and individual school officials—not the State itself—and did not hold that Utah had waived its common-law sovereign immunity. *Id.* ¶ 4. Instead, *Spackman* recognized that, except for the Takings Clause, the Utah Constitution provides no textual right to damages and the legislature has created no general statutory damages remedy for state constitutional violations. *Id.* ¶ 20.

Consistent with this distinction, this court has held that except for the Takings Clause, common-law sovereign immunity bars claims for damages against the State under the Utah Constitution. *See P.J. ex rel. Jensen v. State*, No. 2:05-cv-00739, 2006 WL 1702585, at *2–3 (D. Utah June 16, 2006) ("In this case, the Jensens have not pointed to 'express constitutional or statutory authority' that waives Utah's sovereign immunity and permits claims against the State for violations of the specific Utah constitutional provisions cited in their complaint."). Because UVU is an arm of the State and Plaintiff identifies no constitutional or statutory provision waiving

immunity for this claim, Plaintiff's Utah constitutional damages claim is barred.[5] Therefore, the court dismisses Plaintiff's Twelfth Cause of Action without prejudice.

**G. Plaintiff's Breach of Contract Claims Are Dismissed Because They Are Preempted by State Law.**

Plaintiff's Thirteenth and Fourteenth Causes of Action allege breach of contract and breach of implied contract, and his Fifteenth Cause of Action alleges breach of implied covenant of good faith and fair dealing (Compl. ¶¶ 186–218).

In support of these claims, Plaintiff alleges that he likely entered into an employment agreement with Defendant, which he expects to obtain through discovery, and that such agreements customarily require employers to comply with federal antidiscrimination and labor laws (Compl. ¶ 188). He further relies on Defendant's policies governing workplace discrimination, disability accommodations, and complaints of discrimination and retaliation as creating contractual or implied contractual obligations (*id.* ¶¶ 189, 201). Plaintiff alleges Defendant breached those obligations by failing to provide qualified ASL interpreters for his disciplinary appeal and other workplace meetings and trainings, asking unlawful interview questions related to his deafness, violating federal law and his procedural due process rights, and failing to follow its own policies and procedures (*id.* ¶¶ 186–96, 197–208). Plaintiff's implied-covenant claim appears to rest on the same alleged conduct (*id.* ¶¶ 209–18).

Defendant proffers various arguments regarding the sufficiency of Plaintiff's contract-based claims, one of which is the assertion that these claims are preempted by the Utah Anti-Discrimination Act (UADA) (ECF 24 at 29–30). Defendant specifically contends that the UADA

---

[5] Plaintiff further cites *Dexter v. Bosko* for the proposition that some cases have decided against dismissing constitutional violation claims (ECF 28 at 20). *See* 2008 UT 29, 184 P.3d 592. In *Dexter*, however, the state of Utah was not a defendant, and sovereign immunity was not at issue. *Id.* Plaintiff cites no other cases to support its argument that sovereign immunity does not apply for violations of Utah's Due Process Clause.

provides the exclusive state-law remedy for employment discrimination and therefore preempts Plaintiff's common-law contract-based claims which arise from Defendant's alleged disability discrimination or failure to accommodate him (*id.*). Plaintiff does not respond to Defendant's preemption argument.

In *Gottling v. P.R. Inc.*, the Utah Supreme Court held that the UADA's exclusivity provision preempts all common-law causes of action for employment discrimination, retaliation, or harassment based on the characteristics protected by the statute, including disability. 61 P.3d 989, 993 (Utah 2002). Here, Plaintiff expressly identifies Defendant's alleged disability discrimination as the conduct constituting the alleged contractual breaches (Compl. ¶¶ 186–96, 197–208). Because these claims merely recast alleged disability discrimination as common-law contract claims, the UADA preempts them under *Gottling*.

Moreover, as articulated by Defendant, when a breach-of-contract claim fails for lack of a contract, a claim for breach of the implied covenant of good faith and fair dealing necessarily fails as well. *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 231 (Utah 2014) ("A claim for breach of the covenant of good faith and fair dealing is a derivative of the breach of contract claim. Because AWBM did not allege the existence of facts required to plead a breach of contract, it has also failed to plead a breach of the covenant of good faith and fair dealing."). Because Plaintiff's express and implied contract claims fail, his implied covenant claim likewise fails. Accordingly, Plaintiff's Thirteenth, Fourteenth, and Fifteenth Causes of Action are dismissed without prejudice.

**H. Plaintiff Cannot Pursue Prospective Injunctive Relief.**

Plaintiff attempts to pursue, or at least makes mention of, injunctive relief in his First, Second, Fifth, Sixth, Ninth, and Tenth Causes of Action, brought under the ADA and the Rehabilitation Act (Compl. ¶¶ 69–70, 81, 116–17, 167–68; and, at 23, 31). As Defendant correctly

articulates, the *Ex parte Young* doctrine provides that "the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune" (ECF 24 at 176 (quoting *Elephant Butte Irrigation Dist. of N.M. v. Dept. of the Interior*, 160 F.3d 602, 607–08 (10th Cir. 1998))). Here, Plaintiff has only brought claims against a state agency, rather than against any state officials. Thus, Plaintiff's request for injunctive relief is barred as the *Ex parte Young* doctrine does not apply to claims against a state or its agencies. *See Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495-96 (10th Cir. 1998) ("[The *Ex parte Young* doctrine] has no application in suits against the States and their agencies, which are barred regardless of the relief sought.") (citation omitted). Therefore, to the extent that Plaintiff is seeking injunctive relief, his claims for said relief are dismissed without prejudice.

## IV. ORDER

For the reasons stated above, the court GRANTS IN PART Defendant's Motion to Dismiss (ECF 24) and hereby ORDERS as follows:

1. Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Causes of Action are DISMISSED without prejudice.
2. Plaintiff's Tenth Cause of Action under the Rehabilitation Act is PARTIALLY DISMISSED as follows:
    a. Plaintiff's claims regarding the failure to accommodate, in connection with the events leading up to the Appeal Meeting, are not dismissed;

b. Plaintiff's claims regarding failure to accommodate, in connection with his application for Facilities Services Technician, and interpreters during other meetings and trainings are DISMISSED without prejudice.

3. To the extent that Plaintiff seeks injunctive relief, such relief is DISMISSED without prejudice.

DATED this 2 September 2026.

Cecilia M. Romero
Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah